JOHNSON, Respondent, v. LA BOLT OIL COMPANY, et al, Appellants.

(252 N. W. 869.)

(File No. 7588. Opinion filed February 24, 1934.)

*Caldwell & Burns,* of Sioux Falls, for Appellants.
*Robert D. Jones,* of Milbank, for Respondent.

WARREN, J.  Plaintiff claimed compensation under the Workmen's Compensation Law (Rev. Code 1919, § 9436 et seq., as amended).  Certain compensation was allowed by a two to one award by the Industrial Board, which was affirmed by the commissioner on a petition for review.  Thereafter an appeal was taken to the circuit court which sustained and affirmed the award made by the commissioner.  This appeal is from the judgment rendered in the circuit court.

The respondent was an employee of the defendant La Bolt Oil Company, and the South Dakota Employers' Protective Association furnished a workmen's compensation insurance policy to said employer.

The respondent, while employed on the 11th day of May, 1932, was injured while he and others were lifting heavy timbers in preparation for placing a tank upon some concrete pillars some seven or eight feet high.  In other words, they were building a runway upon which to roll a new steel tank which was some eleven feet in diameter and some seven feet long.  The timbers used in making the runway were about 12x12 inches and 14 to 15 feet long.  While the respondent was engaged in lifting one of the timbers, he felt a sharp pain in his side, and examination thereafter showed that he had suffered an inguinal hernia while lifting one of the timbers.

From the evidence it appears that the respondent and one other were employed by the La Bolt Oil Company to work at both the service and the bulk supply station and to drive a truck for the company, and that respondent was insured while engaged in such work.

The workmen's compensation policy, while it does not specifically mention or provide for injuries received while employee was engaged in such work as the respondent was doing when he was injured, however, does provide for injuries received while engaged in the distribution of gasoline and oils, and it seems to us that the work of setting up the tank in which respondent was engaged when injured was in line with his regular work. The evidence shows that a new bulk tank was to be raised and placed upon a platform of concrete pillars, and it is respondent's contention that as an employee of the oil company at the bulk station it was his duty to aid in placing the timbers in position for the runway upon which the new bulk tank was to be rolled, and he further contends that it was during the raising of one of these timbers or planks that he was injured.

Men whom oil companies employ are generally required to do, without the hiring of outside help, whatever work needs to be done at the service and bulk stations, such as setting up equipment, repair work, and such classes of work as they themselves are able to do. The appellant insurer must have known, as a matter of course, what different kinds of work the insured was likely to have to engage in, and we therefore think that the policy which the insurer issued was intended both by appellant and respondent to cover the setting up of equipment, repair, distribution, or whatever work respondent was required to engage in in connection with his work of taking care of the bulk station.

The respondent contends that, due to the strain of lifting the heavy timbers for the platform, he developed an inguinal hernia. The testimony of the two doctors who operated upon respondent and who testified at the hearing was to the effect that respondent was in good health, "was a big, husky fellow," that in their examination they found nothing that would indicate prior weakness or a diseased condition, and that to the best of their belief the respondent developed the hernia on May 11, 1932, during the time he was helping to build the heavy runway.

Appellant cites Frank v. Chicago, Milwaukee & St. Paul Ry. Co., 49 S. D. 312, 207 N. W. 89, 92, in support of his contention that, where an employee exerts himself in an ordinary manner and as intended and where hernia results from the mere exertion and a bodily weakness, there is no accident, and no recovery will be

permitted. An examination of that opinion cited discloses the fact that claimant suffered from a clot of blood formed in the vein through infection, and that it was a case of thrombosis formed in the upper part of the thigh in the femoral vein, a large vein near the middle of the leg. It was contended in that case that the applicant suffered from disease or infection, and this contention was supported by well-established medical authority. In that case we said: "If the ailment was thrombus phlebitis, and there is no evidence that it was anything else, it could not have been the result of an accident arising out of and in the course of the employment, but was a disease resulting from some cause other than an injury by accident."

The court used the following language: "Claimant was doing his work in the usual manner, as intended, without unusual strain or mishap. Before he can recover it must appear that some mishap, some untoward and unexpected event, occurred without design; that some accidental injury was suffered, traceable to a definite time, place and cause. Matthiessen & Hegeler Zinc Co. v. Industrial Board, 284 Ill. 378, 120 N. E. 249; Taylor v. Swift & Co., 114 Kan. 431, 219 P. 516; Kutschmar v. Briggs Mfg. Co., 197 Mich. 146, 163 N. W. 933, L. R. A. 1918B, 1133. Any exertion which increases the heart action no doubt distends the veins and arteries in increased pulsations and consequent burden upon the veins, but this is usual, expected, and not injurious. Exercise is usually considered beneficial. Perhaps too much exercise or labor may be injurious and produce varicose or permanently distended veins, but such a condition must be classed as a disease —it cannot be classed as caused by accident."

However, it will be observed that, in the closing lines of the above, the writer of the opinion emphasizes that the condition must be classed as a disease and not as having been caused by accident. This is further disclosed by what this court had just previously said when it quoted from the Workmen's Compensation Act (section 9490) as follows: "'Injury' or 'personal injury' shall mean only injury by accident rising out of and in the course of the employment and shall not include a disease in any form except as it shall result from the injury."

It will be observed that the statute seeks to fix personal injury due to accident, and it shall not include disease in any form except

as it shall result from the injury. The result reached in the Frank Case is fully justified by the conclusion of the court that the disability there involved was due to disease as distinguished from accident. Anything further that may have been said in that case should not be construed as barring the recovery in the instant case, and we expressly renounce and overrule the language used in that case as follows: "Claimant was doing his work in the usual manner, as intended, without unusual strain or mishap. Before he can recover it must appear that some mishap, some untoward and unexpected event, occurred without design; that some accidental injury was suffered, traceable to a definite time, place, and cause."

■ We are of the opinion that to constitute an injury "by accident" within the meaning of section 9440, R. C. 1919, it is sufficient that the injury itself is unexpected, and that it is not necessary that the cause of the injury should be untoward or unexpected, occurring without design.

■ In the case at bar there is testimony to the effect that the attending physician did not see anything indicating when the hernia developed or occurred except from the history of the case, and that the thickness of the wall indicated only in a general way whether the hernia was old or recent. Old hernias have thick walls, and new hernias thin ones. This had a thin wall. It is therefore apparent that the board of arbitration and the industrial commissioner could conclude, from the evidence before them, that it was a recent hernia and that it occurred on May 11, 1932, and from the testimony of one physician, that he "would say it was a new hernia."

Bayer v. Chicago, B. & Q. Ry. Co., 53 S. D. 166, 220 N. W. 459, 460, cited by appellant, was an action for damages brought under the Federal Employers' Libality Act (45 USCA §§ 51-59) and not under the South Dakota Workmen's Compensation Law, and was based upon the federal act on which the action was brought making the appellant liable for "injury or death, resulting in whole or in part from the negligence" of any of its officers, agents, or employees or "by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." It will be observed from the foregoing and the language used by the writer of the opinion that the facts are not identical with those

in the case before us, because that case was one dealing with negligence attributable to appellant, while in the instant case we are expressly confined to injury by accident under our South Dakota Workmen's Compensation Law.

The facts in Kutschmar v. Briggs Mfg. Co., 197 Mich. 146, 163 N. W. 933, L. R. A. 1918B, 1133, are not at all in line or parallel with the facts disclosed by the record before us.

The case of Robbins v. Original Gas Engine Co., 191 Mich. 122, 157 N. W. 437, 439, is almost identical to the instant case. In the Robbins Case the claimant suffered an inguinal hernia while helping to lift a heavy engine. Medical testimony was to the effect that the hernia was new and was not an old hernia, and that it was caused by the strain in moving the heavy engine. The court, in part, said: "* * * It is assumed that it was the first time the sac had been forced through the abdominal wall. If it is also assumed that there was a certain lack of physical integrity in the parts where the injury was manifested, still I think claimant may have compensation for the injury he suffered. I decide only the particular case, and in doing so decline to hold, upon this record, that claimant suffered from disease and not from accidental injury. * * *" See, also, Bell v. Hayes-Ionia Co., 192 Mich. 90, 158 N. W. 179; Hurley v. Selden-Breck, 193 Mich. 197, 159 N. W. 311; Valeri v. Village of Hibbing, 169 Minn. 241, 211 N. W. 8, 60 A. L. R. 1296; Poccardi v. Public Service Commission, 75 W. Va. 542; 84 S. E. 242, L. R. A. 1916A, 299; Case of Brown, 123 Me. 424, 123 A. 421, 60 A. L. R. 1293, and note.

Appellant contends that respondent did not slip or fall and that nothing unusual happened that could be called an accident, and that there would have been no hernia if there had not been a weakness in respondent's bodily structure; that for these reasons respondent's injury is not compensable.

█ The fact that the respondent may have had a weakness in his bodily structure or that he was predisposed to hernia, although the evidence does not prove such a fact, would not, we believe, prevent him from recovering compensation under the Workmen's Compensation Act. In the case of Hartz v. Hartford Faience Co., 90 Conn. 539, 97 A. 1020, 1022, where an employee, while lifting a barrel, suffered a hernia, to which he was predisposed, the court said: "When the exertion of the employment acts

upon the weakened condition of body of the employee, or upon an employee predisposed to suffer injury in such way that a personal injury results, the injury must be said to arise out of the employment. An employee may be suffering from heart disease, aneurism, hernia, as was Mr. Hartz, or other ailment, and the exertion of the employment may develop his condition in such a manner that it becomes a personal injury. The employee is then entitled to recover for all the consequences attributable to the injury. The acceleration or aggravation of a pre-existing ailment may therefore be a personal injury within our act. * * * " See, also, Puritan Bed Spring Co. v. Wolfe, 68 Ind. App. 330, 120 N. E. 417; Jordan v. Decorative Co., 230 N. Y. 522, 130 N. E. 634; Alpert v. Powers, 223 N. Y. 97, 119 N. E. 229; Bell v. Hayes-Ionia, supra; Springfield District Coal Mining Co. v. Industrial Commission et al, 303 Ill. 528, 135 N. E. 792.

■ The board of arbitration made findings of fact. Thereafter upon a petition for review the industrial commissioner made findings sustaining the board of arbitration, made an award and a judgment. We believe that there is substantial evidence to sustain the findings and conclusions of the board and industrial commissioner. We cannot disturb the findings if there is reasonable, credible, and substantial evidence to support them. Wieber v. England, 52 S. D. 72, 216 N. W. 850; Id., 59 S. D. 1, 238 N. W. 25; Day v. Sioux Falls Fruit Co. et al, 43 S. D. 65, 177 N. W. 816; Vodopich v. Trojan Mining Co., 43 S. D. 540, 180 N. W. 965; Dependents of Shaw v. Freeman C. Harms Piano Co., 44 S. D. 346, 184 N. W. 204; Wakefield v. Warren-Lamb Lumber Co., 46 S. D. 510, 194 N. W. 835; Ross v. Independent School District, 49 S. D. 491, 207 N. W. 446; Cassels v. H. W. Cassels & Co. et al, 59 S. D. 643, 242 N. W. 587; Barwin v. Ind. Sch. Dist. of Sioux Falls, 61 S. D. 275, 248 N. W. 257.

The judgment and order appealed from are affirmed.

ROBERTS, P. J., and RUDOLPH, J., concur.

POLLEY, J., dissents.

CAMPBELL, J. (concurring specially). I agree that respondent was engaged in the course of his employment at the time he suffered the injury involved in this case. I believe also that, according to the better view, the respondent in this case suffered

a personal injury "by accident" within the meaning of section 9440, R. C. 1919, notwithstanding the fact that to hold that there was an injury by accident in this case is absolutely to depart from the pronouncement of this court in the case of Frank v. C., M. & St. P. Ry. Co. (1926) 49 S. D. 312, 207 N. W. 89.

The language of our Workmen's Compensation Law providing for compensation where personal injury or death occurs "by accident arising out of and in the course of the employment" is identical with the English acts of 1897 and 1906. It was the view of the earlier English cases that to constitute an injury "by accident" it was not enough that the injury itself was unexpected, but was essential that the cause of the injury be some unforeseen and unusual operation, act, or condition. That is also the view held by a few jurisdictions in the United States under comparable acts. See Stombaugh v. Peerless Wire Fence Co. (1917) 198 Mich. 445, 164 N.W. 537; Jakub v. Industrial Commission (1919) 288 Ill. 87, 123 N.E. 263; Martin v. State Compensation Commr. (1929) 107 W. Va. 583, 149 S. E. 824. That view has been departed from in England, however, since the cases of Fenton v. Thorley & Co., Ltd., [1903] A. C. 443, 5 W. C. C. 1, and Clover, Clayton & Co., Ltd., v. Hughes [1910] A. C. 242, 3 B. W. C. C. 275.

" * * * While the English cases have consistently regarded the phrase 'by accident' as indicating something unexpected, the earlier and later cases differ as to whether the cause of the injury must be some unforeseen and unusual operation of the business or condition of the plant, or whether it was enough that the injury itself was unexpected.

"The earlier cases required that there must have been something unusual and unexpected in the external influences to which the sufferer was subjected in the course of his employment. No injury was regarded as sustained by accident where the workman was harmed while doing the very work he was employed to do under conditions usual thereto. No compensation was awarded unless there was some departure from the ordinary operation of the business or some unusual condition of the plant; it was not enough that, because of some peculiar physical condition of the workman, permanent or transitory, known to him or not known to him, the work, which he did not expect to injure him, in fact

proved harmful; there must be some factor external to the claimant's physical condition.

"The courts, however, were prone to regard rather minute departures from the ordinary course of the employment as being sufficient to amount to an unexpected external event.

"It was also held that the departure from the usual operation of the business might be some unusual act of the servant himself if done in the prosecution of the business, and this act might be some careless act of his own—an unintentional slip, or an act intentionally done but whose results, owing to some miscalculation, were not foreseen or designed. It is evident that there is much to be said for this interpretation; any other view would bar a stupid or ignorant servant from compensation where he had through some slight miscalculation subjected himself to injury which a more skilled and prudent workman would have avoided.

"Since the case of Fenton v. Thorley, nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. It is no longer required that the causes external to the plaintiff himself, which contribute to bring about his injury, shall be in any way unusual; it is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing. What was actually probable or even inevitable because of circumstances unknown to the sufferer is even more unimportant. The test is purely subjective to the injured workman." 25 Harv. Law Rev. 328 at 339.

And it remains distinctly the minority view in the United States. See Patrick v. Ham Co. (1921) 119 Me. 510, 111 A. 912, 13 A. L. R. 427; Guay v. Brown Co. (1928) 83 N. H. 392, 142 A. 697, 60 A. L. R. 1284.

It is possible that the Frank Case above mentioned might have been decided entirely upon the ground that the damage to the claimant there was disease as distinguished from injury. Nevertheless, in that case, whether absolutely essential to the decision thereof or not, this court definitely and deliberately adopted the

minority view above mentioned as to the construction of the phrase "injury by accident," saying at page 317 of 49 S. D., 207 N. W. 89, 91: "Claimant was doing his work in the usual manner, as intended, without unusual strain or mishap. Before he can recover it must appear that some mishap, some untoward and unexpected event, occurred without design; that some accidental injury was suffered, traceable to a definite time, place, and cause. Matthiessen & Hegeler Zinc Co. v. Industrial Board, 284 Ill. 378, 120 N. E. 249; Taylor v. Swift & Co., 114 Kan. 431, 219 P. 516; Kutschmar v. Briggs Mfg. Co., 197 Mich, 146, 163 N. W. 933, L. R. A. 1918B, 1133"—and this view was subsequently approved, either expressly or by necessary inference, in the cases of Bayer v C. B. & Q. R. Co. (1928) 53 S. D. 166, 220 N. W. 459, and Moore v. Whipkey (1933) 62 S. D. 56, 251 N. W. 803.

The rule that we announced in the Frank Case with reference to "injury by accident" is held in but few jurisdictions, and, upon more thorough and careful consideration, I do not believe that it is supported by the better reason, and I am convinced that its adoption by this court in the Frank Case was ill-advised and that we should now recede from it. Upon these considerations, I concur in the affirmance herein.